IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| TREVOR FITZGIBBON ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19cv00102 |
| ) | |
| ) | **TRIAL BY JURY** |
| INSTITUTE FOR PUBLIC ACCURACY ) | **IS DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

# COMPLAINT

Plaintiff, Trevor Fitzgibbon, by counsel, files the following Complaint against Defendant, Institute for Public Accuracy ("IPA").

Plaintiff seeks (a) compensatory damages and punitive damages in the amount of **$2,350,000.00**, (b) prejudgment interest on the principal sum awarded by the Jury from May 23, 2018 to the date of Judgment at the rate of six percent (6%) per year pursuant to § 8.01-382 of the Virginia Code (1950), as amended (the "Code"), and (c) court costs – arising out of defamation committed by IPA's employee, Jesselyn Radack.

## I. PARTIES

1. Plaintiff, Trevor Fitzgibbon ("Fitzgibbon"), was born in Lynchburg, Virginia. He is 47-years old. He is now a citizen of North Carolina. Fitzgibbon founded and ran a progressive public relations firm, Fitzgibbon Media, Inc. ("Fitzgibbon Media"), which was headquartered in Virginia. Fitzgibbon's clients included many high-profile whistleblowers, such as PFC Chelsea Manning, Glenn Greenwald, and WikiLeaks.

1

When the National Security Agency ("NSA") domestic spying story broke, former NSA employee, Edward Snowden ("Snowden"), was holed up in Hong Kong and WikiLeaks was working to get him asylum. On behalf of Julian Assange and WikiLeaks, Fitzgibbon (pro bono) arranged a media briefing on Snowden and his status. In 2015, one of Snowden's lawyers, Jesselyn Radack ("Radack"), told *Style Weekly* that Fitzgibbon's pro bono work for Snowden was "invaluable." According to Radack, Fitzgibbon was also "instrumental to events like 'Restore the Fourth,'" [https://restorethe4th.com/][1] where, in 2015, Radack read a statement from Snowden. Radack heaped praise on Fitzgibbon's handling of media relations for high-profile whistleblowers. According to Radack, Fitzgibbon Media exhibited "genuine concern for client well-being, not just placing a story." [https://www.styleweekly.com/richmond/the-fire-starter/Content?oid=2233402]. Over his long career in public relations and media communications, Fitzgibbon developed many long-standing professional relationships and friendships with whistleblowers and activists in Virginia, including former CIA officer, John Kiriakou ("Kiriakou") [http://www.johnkiriakou.com/], former Pentagon and State Department analyst, Matthew Hoh ("Hoh") [https://matthewhoh.com/about-me/], and many others. Fitzgibbon's personal and professional base is in Virginia, and this is where he suffered damage in 2018 and 2019 as a result of the publication of false and defamatory statements by IPA.

2.   Defendant, IPA, is a California corporation with a principal office in the District of Columbia. Founded in 1998 by Norman Solomon, IPA is a national media

---

[1] Restore the Fourth is a non-partisan, non-violent advocacy and protest movement demanding an end to the United States' unconstitutional surveillance methods. [https://twitter.com/Restore_the4th; https://restorethe4th.com/who-we-are/].

outreach organization and advocacy group consisting of lawyers, public-policy researchers, analysts, bloggers and activists, many of whom are located in and operate out of Virginia.  IPA's central purpose is to generate media exposure (publicity) for progressive perspectives on issues such as human rights, economic justice, the environment, and foreign policy. [http://accuracy.org/about-us/].  IPA disseminates its policies and educational material and information to the public through print media, main stream media, social media, radio and lectures.  IPA's Board of Directors includes Hoh and other long-time activists.  IPA's staff, journalists, advisers, agents and operatives are spread all over the United States, including many who live and work in and from Virginia. [*E.g.,* Barbara Ehrenreich, Andrew Cockburn and David Swanson].  IPA funds its operations with donations and financial support, which it solicits from from individuals and progressive foundations and funds in Virginia and elsewhere.

       3.     Launched by IPA in June 2014, "ExposeFacts.org" is a "project" run by IPA that encourages and facilitates the disclosure of confidential information by whistleblowers.  ExposeFacts "aims to shed light on concealed activities that are relevant to human rights, corporate malfeasance, the environment, civil liberties and war.  At a time when key provisions of the First, Fourth and Fifth Amendments are under assault, we are standing up for a free press, privacy, transparency and due process as we seek to reveal official information—whether governmental or corporate—that the public has a right to know." [https://exposefacts.org/about-exposefacts/].   Assisted by the Freedom of the Press Foundation and its "SecureDrop" whistleblower submission system, ExposeFacts utilizes "technology" that allows whistleblowers to anonymously submit materials via the ExposeFacts.org website.  The "seasoned editorial board" of

ExposeFacts assesses all submitted material and, when deemed in the public interest, arranges for it to be leaked to the press. In exercising its judgment, the editorial board is able to call on the expertise of the ExposeFacts "advisory board", which includes more than 40 journalists, whistleblowers, former U.S. government officials and others with wide-ranging expertise, at least four of whom live and work in Virginia. In addition to ExposeFacts' "advisory board", IPA has a "roster of several thousand experts, built since the late 1990s" that give it "enormous range and depth—with the capacity to draw on vast knowledge and professional experience in such areas as intelligence, the military, diplomacy, government surveillance, civil liberties, banking, Wall Street abuses, corporate malfeasance and whistleblowing." [https://exposefacts.org/about-exposefacts/]. Many of IPA's "experts" that it uses in connection with its whistleblowing business live and work in Virginia. Many still work for the United States Government.

    4.    Jesselyn A. Radack ("Radack") is an employee of IPA. Radack is an attorney, business advisor, lecturer and author. She transacts substantial business in Virginia on behalf of IPA. Radack is the director of the "Whistleblower & Source Protection Program" (WHISPeR) at ExposeFacts. WHISPeR "provides critical legal support for whistleblowers and media sources in the national security and human rights arena." [https://whisper.exposefacts.org/]. Radack's employment involves legal representation of clients, business advice to whistleblowers, sources and online activists, and, for the most part, public advocacy via lectures and social media. Since joining IPA in 2015, Radack has had continuous and systematic ties to Virginia. Her clients and

causes are all connected to Virgnia: the CIA, NSA, FBI, Edward Snowden,[2] and drone operators at the Counterterrorism Airborne Analysis Center in Langley, Virginia. On May 11, 2015, the day Judge Brinkema sentenced CIA officer Jeffrey Sterling to 42 months in prison for leaking classified information to New York Times ("NYT") reporter, James Risen [Case 1:10-cr-00485-LMB-1 (Documents 472-473)], Radack was physically present and available for comment in front of the United States Federal Courthouse in Alexandria. [*See, e.g.,* http://www.accuracy.org/release/cia-whistleblower-sentencing-today/ ("The sentencing … is set for 2 pm. Immediately afterward, former CIA official Ray McGovern and former Justice Department official Jesselyn Radack will be available for comment in front of the courthouse.")].

5. Radack actively and continuously uses Twitter in connection with her employment for IPA to espouse IPA's progressive policies and to communicate with whistleblowers, activists, clients, media sources and other business colleagues in Virginia. As of April 6, 2018, Radack had 35,601 followers on Twitter, including many extremely very high-profile followers in Virginia. Radack is on Twitter constantly as part of her job to advocate the progressive interests of IPA. Radack's Twitter profile is a work profile, which highlights her position and employment with IPA, and links to IPA's website as follows:

---

[2] *See, e.g., United States v. Snowden*, Case 1:13-cr-265 (CMH) (E.D. Va.) (06/14/2013) (Under Seal).



Radack's Virginia clients, business colleagues and/or Twitter followers in Virginia included the following persons:

- John Kiriakou – @JohnKiriakou
- Said Barodi – @barodi_said
- Senator Mark S. Warner – @MarkWarner
- Andrew M. Cockburn – @andrewmcockburn
- Barbara Ehrenreich – @B_Ehrenreich
- Matthew P. Hoh – @MatthewPHoh
- Daniel P. Meyer
- John Crane
- Josh Gerstein – @joshgerstein.

Radack has been on the radio and television hundreds of times, including many appearances in Virginia, promoting herself and IPA's many causes.

[*See, e.g.,* [https://www.wbai.org/recentprogram.php?recentid=72](https://www.wbai.org/recentprogram.php?recentid=72);

[https://archive.org/details/TalkNationRadioTheWarOnWhistleblowersWithThomasDrakeAndJesselyn](https://archive.org/details/TalkNationRadioTheWarOnWhistleblowersWithThomasDrakeAndJesselyn);

[http://davidswanson.org/talk-nation-radio-the-war-on-whistleblowers-with-thomas-drake-and-jesselyn-radack/](http://davidswanson.org/talk-nation-radio-the-war-on-whistleblowers-with-thomas-drake-and-jesselyn-radack/);

6

https://www.pinterest.com/jesselynradack/;

https://www.youtube.com/watch?v=isiBjM5W96M (December 12, 2014) (Joining *Larry King Live* from Arlington, Virginia)].

6. At all times relevant to this action, Radack acted within the scope of her employment, acted during work hours and while conducting IPA business, using a work Twitter account that linked back to IPA, and with the knowledge and actual or apparent authority of IPA. IPA is liable for Radack's defamation of Plaintiff under the doctrine of *respondeat superior*.

### III. JURIDICTION AND VENUE

7. The United States District Court for the Eastern District of Virginia has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different States and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest, costs and fees.

8. IPA is subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3) and (A)(4) and § 8.01-328.1(B) of the Code, as well as the Due Process Clause of the United States Constitution. IPA engages in continuous and systematic business in Virginia. Radack committed multiple intentional torts and acts of defamation in whole or part in Virginia. She intentionally published defamatory statements via Twitter to Virginia citizens with the intent to harm Fitzgibbon's reputation. IPA and its agents, including Radack, have minimum contacts with Virginia such that the exercise of personal jurisdiction over IPA comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution. Fitzgibbon's claims directly arise from and relate to Radack's publication of false and defamatory statements in Virginia. *See*

*Calder v. Jones*, 465 U.S. 783 (1984); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

9. Venue is proper in the Richmond Division of the United States District Court for the Eastern District of Virginia. IPA is subject to personal jurisdiction in Virginia. Further, Radack knowingly and deliberately published and republished defamatory statements to a wide audience that includes many persons who Radack knew lived and worked in Virginia. The injuries at issue in this case, including the insult, pain, embarrassment, humiliation, and mental suffering inflicted upon Fitzgibbon by Radack, were sustained in Virginia, where Radack's tweets were published.

## COUNT I – DEFAMATION *PER SE*

10. Between May 2018 and January 2019, Radack leveraged her substantial following on Twitter, which includes her internationally renowned clients, to publish and republish multiple false and defamatory statements about Fitzgibbon.

11. On April 13, 2018, Fitzgibbon commenced an action against Radack in the United States District Court for the Eastern District of Virginia. [*Case 3:18-cv-247-REP*].

12. In retaliation, Radack began a campaign of defamation that did not stop, even after the District Court entered a Restraining Order. Radack used her Twitter account to tweet, retweet, reply to and like (publish and republish) false and defamatory statements about Fitzgibbon to her 35,600 Twitter followers, including the following posts:

Continued On Next Page

**May 23, 2018**[3]



---

[3] The Facebook radio broadcast is titled, "Publicists for Predators". [http://kpppfm.com/podcasts/a-mexican-crossing-lines-publicists-for-predators/]. The hosts of the radio show, *inter alia*, call Fitzgibbon a "rapist" and a "sexual predator".

9

**June 1, 2018**



Radack was the one person who "like[d]" this tweet by "Carli Stevenson". By liking the tweet, Radack knowingly and intentionally republished the false and insulting words to her Twitter followers. Radack also teamed up with her client, Thomas Drake ("Drake") on June 1, 2018 to retweet the following false statements of and concerning Fitzgibbon:



As part of the concerted Twitter campaign, Radack and her co-conspirators and agents repeatedly use the words "prey" and "predator" to describe Radack ("prey") and Fitzgibbon ("predator"). These words were chosen by Radack and Drake. The words are very powerful and are calculated to influence popular opinion.

**June 5, 2018**



**June 10, 2018**



11

**June 24, 2018**



**June 29, 2018**



Radack's June 29, 2018 tweet, which falsely implies that Fitzgibbon's actions and his lawsuit against Radack are similar to those of the Capital Gazette shooter, is especially defamatory and injurious. The Capital Gazette shooting received national press coverage for many weeks. Descriptions of shooter's long history of stalking and harassing his victims was widely reported. *See, e.g.,* https://www.nytimes.com/2018/06/28/us/capital-gazette-annapolis-shooting.html; http://www.baltimoresun.com/news/maryland/crime/bs-md-gazette-shooting-20180628-story.html; https://www.cnn.com/2018/06/29/us/capital-gazette-shooting/index.html; https://www.cbsnews.com/news/annapolis-shooting-five-dead-in-shooting-at-capital-gazette-newspaper-in-maryland-suspect-in-custody-2018-06-28-live-updates/; https://www.nbcnews.com/news/us-news/multiple-people-reported-

12

shot-maryland-newspaper-office-n887526;

https://www.npr.org/2018/06/29/624700775/new-details-emerge-about-deadly-shootings-in-capital-gazette-newsroom.

**June 30, 2018**



**July 5, 2018**



13

Radack and her partner, Drake, repeatedly used Twitter to publicly portray Fitzgibbon's legal action as an attempt to "re-victimize" Radack. Radack falsely accused Fitzgibbon of being a "notorious misogynist", who "sexually assaulted" her. Radack stated that Fitzgibbon was a "notorious sexual predator".

### July 11, 2018





14



**January 18, 2019**



       13.    In her tweets and by her retweets, Radack repeatedly denigrated Fitzgibbon and maliciously repeated her false criminal charges of sexual assault. The social media assault, undertaken by Radack while in the employment of IPA and with IPA's knowledge and tacit consent, was continuous and systematic. It is ongoing.

15

14. Radack made and published to third-parties, including her 35,600 Twitter followers, numerous false factual statements, which are detailed verbatim above, of or concerning Fitzgibbon.

15. By tweeting and retweeting, Radack knew or should have known that her false and defamatory statements would be republished over and over by third-parties millions of times to Fitzgibbon's detriment and injury. Republication by Radack's Twitter followers, including Drake, was the natural and probable consequence of Radack's actions and was actually and/or presumptively authorized by Radack. In addition to her original publications, Radack is liable for the republication of the false and defamatory statements by third-parties under the doctrine announced by the Virginia Supreme Court in *Weaver v. Home Beneficial Co.*, 199 Va. 196, 200, 98 S.E.2d 687 (1957) ("where the words declared on are slanderous per se their repetition by others is the natural and probable result of the original slander.").

16. Radack's false statements constitute defamation *per se*. The statements accuse and impute to Fitzgibbon the commission of felonies and crimes involving moral turpitude and for which Fitzgibbon may be punished and imprisoned in a state or federal institution. Rape, for instance, is punishable, in the discretion of the court or jury, by confinement in a state correctional facility for life or for any term not less than five years. *§ 18.2-61(B) of the Virginia Code (1950), as amended*. Sexual battery is a Class 1 Misdemeanor. *§ 18.2-67.4 of the Virginia Code*. Radack's statements also impute to Fitzgibbon an unfitness to perform the duties of an office or employment for profit, or the want of integrity in the discharge of the duties of such office or employment. Radack's statements also severely prejudice Fitzgibbon in his profession or trade.

17. Radack's false statements harmed Fitzgibbon.

18. Radack made the false statements with actual or constructive knowledge that they were false or with reckless disregard for whether they were false. Radack acted with actual malice and reckless disregard for the truth for the following reasons:

    a. Radack lied to the police and lied to the United States Attorney. She manufactured criminal charges against Fitzgibbon and, after those charges were dropped, she sought revenge. After Fitzgibbon sued her, Radack doubled-down on the reprisal. After the Federal Court entered a Restraining Order in *Fitzgibbon v. Radack*, Radack continued to defame Fitzgibbon.

    b. Radack set out to promote a predetermined agenda, which was to destroy Fitzgibbon's reputation with falsehoods.

    c. Radack continued to publish and republish false and scandalous statements and to use unnecessarily strong, violent, scandalous and egregious language, disproportionate to any occasion.

    d. Radack did not act in good faith because, in the total absence of evidence and in the face of her own text messages and nude photos, she could not have had an honest belief in the truth of her statements about Fitzgibbon.

    e. Radack reiterated, repeated and continue to republish false and defamatory statements, and enticed others to do so – even after Fitzgibbon filed suit against her – out of a desire to hurt Fitzgibbon and to permanently stigmatize him.

19. Radack lacked reasonable grounds for any belief in the truth of her statements, and, at the very least, acted negligently in failing to determine the true facts.

17

20. As a direct result of Radack's defamation, Fitzgibbon suffered substantial damage and loss, including, but not limited to, presumed damages, actual damages, loss of business and income, pain and suffering, emotional distress and trauma, insult, anguish, stress and anxiety, public ridicule, humiliation, embarrassment, indignity, damage and injury to his reputation, attorney's fees, costs, and other out-of-pocket expenses in the sum of $2,000,000.00.

21. IPA is liable for Radack's defamation under the doctrine of *respondeat superior*. After IPA learned about Fitzgibbon's action in the Eastern District of Virginia, IPA continued to permit Radack to use her Twitter account to publish false and defamatory statements and insulting words about Fitzgibbon. At all times relevant to this case, IPA knew that Radack was defaming Fitzgibbon. IPA had the power to control and direct Radack's actions, but refused to do so. By staying silent and allowing Radack to continue the defamation, IPA endorsed, ratified, participated in and weaponized Radack's false accusations and repeated defamation.

Trevor Fitzgibbon alleges the foregoing based upon personal knowledge, public statements of others, and records in his possession. He believes that substantial additional evidentiary support, which is in the exclusive possession of IPA and Radack's sources, clients, agents, surrogates, alter egos and other third-parties, including former clients of Fitzgibbon Media, will exist for the allegations and claims set forth above after a reasonable opportunity for discovery.

Fitzgibbon reserves the right to amend this Complaint upon discovery of additional instances of IPA's wrongdoing.

## CONCLUSION AND REQUEST FOR RELIEF

WHEREFORE, Trevor Fitzgibbon respectfully requests the Court to enter Judgment against IPA as follows:

A. Compensatory damages in the sum of $2,000,000.00;

B. Punitive damages in the amount of $350,000.00 or the maximum amount allowed by law;

C. Prejudgment interest at the rate of 6% per year on the Principal Sum awarded by the Jury from May 23, 2018 to the date of Judgment;

D. Postjudgment interest at the rate of six percent (6%) per annum until paid;

E. Attorney's Fees and Costs;

F. Such other relief as is just and proper.

## TRIAL BY JURY IS DEMANDED

DATED: February 14, 2019

TREVOR FITZGIBBON

By: */s/ Steven S. Biss*
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: **stevenbiss@earthlink.net**

*Counsel for the Plaintiff*